**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **RICHARD STAMPER,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FRANK BISIGNANO,**<br>***Commissioner of Social Security*,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **NO. 5:25-CV-00260-MAS** |

**MEMORANDUM OPINION & ORDER**

This matter is before the Court on Plaintiff Richard Stamper's Motion to Alter Judgment Pursuant to Federal Rule of Civil Procedure 59(e). [DE 30]. Stamper indicates that the Defendant Commissioner of Social Security "takes no position on the motion." [DE 30-1]. The Commissioner did not oppose the previous three motions for attorneys' fees. [DE 24; DE 26; DE 28]. The undersigned has considered all of the foregoing, and the motion is now ripe for review.

## I. RELEVANT BACKGROUND

On April 27, 2026, Stamper filed an Unopposed Motion for Attorneys' Fees. [DE 24]. Upon identifying several substantive issues, this Court denied the motion without prejudice. [DE 25]. Stamper filed an Amended Motion for Attorneys' Fees, addressing several of the issues the Court identified. [DE 26]. The Court determined that the amended motion had further substantive issues, primarily relating to

Stamper's request for an hourly fee exceeding the statutory cap of $125.00 per hour. [DE 27]. Specifically, the undersigned explained that simply submitting the Department of Labor's Consumer Price Index is insufficient to justify an above-cap award, noting that Stamper must also demonstrate that the requested rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill experience, and reputation." [DE 27, Page ID# 1090 (quoting *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 450 (6th Cir. 2009)]. The Court warned that it "may default to the EAJA presumptive statutory cap of $125 where a 'claimant has failed to substantiate his request for a higher [fee award].'" [DE 27, Page ID# 1091 (quoting *Doucette v. Comm'r of Soc. Sec.*, 13 F.4th 484, 492 (6th Cir. 2021)]. Again, the Court denied the motion without prejudice, permitting leave to re-file upon correcting the noted deficiencies. [DE 27].

Stamper filed a third Amended Motion for Attorneys' Fees, attempting to remedy the deficiencies. [DE 28]. On June 18, 2026, the undersigned issued a Memorandum Opinion and Order granting in part and denying in part the third Amended Motion. [DE 29]. The Court concluded that an award of attorneys' fees was warranted but denied Stamper's request for an hourly fee rate exceeding the Equal Access to Justice Act's ("EAJA") $125.00 statutory cap as inadequately supported. On June 25, 2026, Stamper filed the instant Motion to Alter or Amend the Judgment, seeking reconsideration of this Court's decision denying the request for a rate greater than $125.00.

## II. ANALYSIS

A motion under Rule 59(e) must establish one of four things: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish and Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010). Stamper's motion invokes two of these grounds. First, Stamper argues that the Court made a clear error of law in "treat[ing] the prevailing-rate inquiry of *Blum v. Stenson* as a demand for individualized proof of the named attorneys' resumes" and "disregard[ing] a recent decision of this District, which the Court itself cited, that fixed the rate of a partner of the same firm at $245.00 for this kind of work after a fully contested fee dispute." [DE 30, Page ID# 1145]. Second, Stamper argues that manifest injustice occurred when this Court "reduc[ed] the consented rate to the statutory floor" because this Court previously granted a "materially identical consented EAJA motion . . . without demanding any of the proof required here." [*Id.*]. Alternatively, Stamper requests leave to supplement the record with the necessary evidence. [*Id.* at Page ID# 1145–46]. The evaluation and disposition of a Rule 59(e) motion is "entrusted to the court's sound discretion." *Keweenaw Bay Indian Community v. United States*, 940 F. Supp. 1139, 1140 (W.D. Mich. 1996) (citing *Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982)).

## III. CLEAR ERROR

The standard for finding a clear error of law is exceptionally high, requiring the movant to "establish not only that the errors were made, 'but that these errors were so egregious that an appellate court would not affirm the judgment.'" *Salinas*

*v. Hart*, No. 15-CV-167-HRW, 2020 WL 1560061, at *3 (E.D. Ky. Apr. 1, 2020) (citing *Dorger v. Allstate Ins. Co.*, No. 2:08-56-DCR, 2009 WL 2136268, at *2 (E.D. Ky. July 16, 2009)). "Such a motion is proper only if it contains 'an argument or controlling authority that was overlooked or disregarded in the original ruling, presents manifest evidence or argument that could not previously have been submitted, or successfully points out a manifest error of fact or law." *Auday v. Wet Seal Retail, Inc.*, No. 1:10-CV-260, 2012 WL 124080, at *1 (E.D. Tenn. Jan. 17, 2012) (quoting *Davie v. Mitchell,* 291 F. Supp. 2d 573, 634 (N.D. Ohio 2003)). Thus, the issue presented is whether Stamper has met this exacting standard.

Stamper contends that this Court committed a clear error of law when it reduced the inquiry of *Blum v. Stenson*, 465 U.S. 886 (1984), to "a demand for individualized proof of the named attorneys' resumes." [DE 30, Page ID# 1145]. Furthermore, Stamper argues that the Court erred when it rejected Stamper's submission of recent judicial determinations of EAJA rates in Social Security cases in the Eastern District of Kentucky, including one from a partner in the same firm, as sufficient evidence of an above-cap rate. [*Id.* at Page ID# 1149]. The Court will address both arguments together.

By arguing that the Memorandum Opinion and Order [DE 29] requires resume submissions for the named attorneys, Stamper misinterprets the Court's reasoning. This Court will acknowledge that it could have been clearer in its reasoning; however, at no point did it order the submission of resumes. Instead, it recognized the "reasonably comparable skill, experience, reputation" requirement of *Blum*, and

explained that the submission of recent fee awards in the Eastern District of Kentucky is insufficient to fulfill that requirement because it does not account for the "reasonably comparable" portion of the requirement. *See Kalar v. Astrue*, No. CIV.A. 10-428-JBC, 2012 WL 2873815, at *1 (E.D. Ky. July 13, 2012) (quoting *Blum*, 465 U.S. at 895 n.11). The Court addresses that requirement in greater detail below.

In the Sixth Circuit, and this District, there is no one path by which a prevailing party must show evidence justifying an above-cap fee award. Courts in the Sixth Circuit have previously accepted a combination of many different types of evidence, including affidavits from local attorneys, state bar surveys, and declarations by the attorneys involved in the case. *See, e.g.*, *Cantu v. Comm'r of Soc. Sec.*, No. 18-11409, 2019 WL 2314863, at *4 (E.D. Mich. May 31, 2019) (finding an above-cap fee award reasonable where the prevailing party submitted cost of living adjustments, the applicable Consumer Price Index for the region ("CPI"), "affidavits explaining that few attorneys are willing to take these cases without a cost of living adjustment and the rates the attorneys normally charge in this area," evidence of the government's compensation rates for law clerks, and the qualifications of her attorneys and their paralegals"); *Gary W. v. Comm'r of Soc. Sec.*, No. 25-CV-10211, 2026 WL 1716157, at *2 (E.D. Mich. June 12, 2026) (allowing an above-cap award based on the plaintiff's submission of the State Bar of Michigan's Economics of Law Service Results and a declaration detailing plaintiff's counsel's extensive professional experience, along with defendant's lack of objection).

On the other hand, at least one district in the Sixth Circuit, the Southern District of Ohio, has narrowed the *Blum*/*Bryant* requirement, holding that "in the future what we will require to comport with *Bryant*, will be affidavits from other members of the local bar in which they testify to their years of experience, skill, and reputation, and thus their consequent hourly rate. Most preferable would be the results of a fee survey conducted by a state or local bar association committee comprised of lawyers in the social security area of practice." *Zellner v. Astrue*, No. 1:10-CV-812, 2012 WL 273937, at *3 (S.D. Ohio Jan. 31, 2012). This district, however, has no such written limitation.[1] Nor does this Court intend to impose one.

Nevertheless, this Court applies *Blum* and *Bryant* according to their terms and requires evidence sufficient to permit the inquiry contemplated by those decisions. As previously noted by this Court, the prevailing party seeking an above-cap fee award "must 'produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 450 (6th Cir. 2009) (quoting *Blum*, 465 U.S. at 895 n.11). The case language itself clearly indicates that the evidence submitted must allow for a reasonable comparison of the skill,

[1] Though it is worth noting that submitting affidavits from members of the local bar is one of the more common types of evidence submitted on this issue in the Eastern District of Kentucky. *See, e.g.*, *Whitley ex rel. S.B. v. Comm'r of Soc. Sec.*, No. 5:24-CV-00365-GFVT, 2026 WL 867762 (E.D. Ky. Mar. 30, 2026) (declarations of two Kentucky social security attorneys unaffiliated with plaintiff's counsel); *Hack v. Bisignano*, No. 3:25-CV-00013-GFVT, 2026 WL 1396213 (E.D. Ky. May 19, 2026) (same); *Doucette v. Saul*, No. 7:16-CV-075-DCR, 2021 WL 9317014 (E.D. Ky. Oct. 25, 2021) (same).

experience, and reputation of the prevailing party's counsel and that of other attorneys providing similar services in the relevant community. As an example, a court in the Southern District of Ohio noted that "a younger attorney (such as counsel here, who had been admitted to the New Jersey bar for less than two years when he prosecuted this case), would be compensated at a lower rate than more experienced counsel." *Cowan v. Comm'r of Soc. Sec.*, No. 1:12-CV-186, 2013 WL 5487364, at *3 (S.D. Ohio Sept. 30, 2013). Furthermore, the *Blum* Court explained that "[t]he type of services rendered by lawyers, as well as their experience, skill and reputation, varies extensively—even within a law firm." *Blum*, 465 U.S. at 896 n.11. Although it need not be extensive, motions seeking attorneys' fees in excess of the statutorily provided hourly rate must allow the Court some mechanism by which to evaluate the appropriate compensation rate for an attorney, taking into account the difference that skill, experience, and reputation make in a reasonable hourly rate. Thus, the Court does not require a particular type of evidence, such as resumes; it requires only evidence sufficient to permit the Court to appropriately engage with the *Blum*/*Bryant* inquiry.

In support of his arguments, Stamper consistently references *Whitley ex rel. S.B. v. Comm'r of Soc. Sec.*, No. 5:24-CV-00365-GFVT, 2026 WL 867762 (E.D. Ky. Mar. 30, 2026). Specifically, Stamper notes that an hourly rate of $245.00 was approved by a judge in this same district for an equity partner, Bryan Konoski, of the same firm litigating his case. [DE 30, Page ID# 1149]. As the *Blum* Court explained, experience, skill, and reputation varies extensively within a law firm. Thus, merely

submitting a decision relating to the same law firm, without more, cannot satisfy the evidentiary requirement. The *Whitley* decision does not discuss Konoski's experience, skill, and reputation, nor does Stamper provide any information by which to compare his counsels' experience, skill, and reputation with Konoski's.

Additionally, Stamper fails to address several factual and evidentiary differences between his case and *Whitley*. Most notably, counsel in *Whitley* provided significantly more evidence to show the reasonableness of the upward deviation from the statutory cap. In support of his motion for attorneys' fees, Whitley submitted: "affidavits of two Kentucky attorneys with experience litigating social security disputes" who validated the requested hourly rate for an experienced litigator, "Bureau of Labor Statistics data supporting her rate calculation," a citation to a social security case in this district with a comparable EAJA fee rate, CPI information for the Midwest All Urban Consumers, detailed information about counsel's experience and qualifications, and declarations from both attorneys involved in litigating her case, which detailed their experience with litigating social security appeals nationally, and in Kentucky. *Whitley*, 2026 WL 867762, at *5; Plaintiff's Reply to Response to Motion for Attorneys' Fees at 10–14, *Whitley*, 2026 WL 867762 (No. 5:24-CV-00365-GFVT); Exhibits 1 and 2 to Plaintiff's Reply to Response to Motion for Attorneys' Fees, *Whitley*, 2026 WL 867762 (No. 5:24-CV-00365-GFVT).

Although Judge Van Tatenhove examined the case cited by Whitley, and provided a reference to two of his own, he specifically referenced only the Bureau of Labor Statistics data and the declarations of the two third-party Kentucky social

security attorneys in finding that the hourly attorney rate of $245.00 was reasonable. *Whitley*, 2026 WL 867762, at *5. More importantly, there is no doubt that Whitley submitted significantly more evidence bearing directly on the reasonableness of counsel's requested hourly rate.

Previously, Stamper found issue with this Court's comparison to cases in which the requested fee award was contested by the Commissioner, like *Whitley*. Although this Court has previously explained why such an argument is misguided, *Gary W. v. Comm'r of Soc. Sec.*, No. 25-CV-10211, 2026 WL 1716157 (E.D. Mich. June 12, 2026) provides an informative example of the sufficient justification of an above-cap fee award in an uncontested case. In *Gary W.*, the plaintiff submitted the CPI, the State Bar of Michigan's 2023 Economics of Law Service Results, and an affirmation from counsel noting his professional experience. *Id.* In finding the fee award reasonable, the court utilized the submitted evidence to compare counsel's hourly rate with attorneys in the prevailing market with comparable experience, noting that counsel's hourly rate was significantly less than the average, and that the Commissioner did not argue that the amount requested was unreasonable. *Id.* As the court's decision in *Gary W.* suggests, although the Commissioner's stance on the fee award is informative in the analysis, the submission of particularized evidence sufficient to establish that the requested rate is "in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation" is dispositive. *See also Cantu v. Comm'r of Soc. Sec.*, No. 18-11409, 2019 WL 2314863, at *4 (E.D. Mich. May 31, 2019) (finding an above-cap fee award

reasonable where the plaintiff provided affidavits certifying the rates normally charged by attorneys in the area, cost of living adjustments, the CPI for the region, citations to the government's rate of compensation for law clerks, and the qualifications of her attorneys and paralegals).

Finally, this Court previously explained that the CPI-All Items Index alone was insufficient to justify an above-cap market rate. [DE 27, Page ID# 1090–91]. Despite Stamper's insistence to the contrary, the case law establishes that CPI data alone will not justify a higher attorney fee. *Whitley*, 2026 WL 867762, at *4 ("Solely submitting Consumer Price Index (CPI) data to justify a higher attorney fee is insufficient because while it establishes an increase in the cost of living it fails to capture what the prevailing market rate in a local community would have been." (citing *Coursey v. Comm'r of Soc. Sec.*, 843 F.3d 1095, 1098 (6th Cir. 2016))).

The law in this Circuit is clear that courts may default to the presumptive statutory cap of $125.00 where a "claimant has failed to substantiate his request for a higher [fee award]." *Doucette v. Comm'r of Soc. Sec.*, 13 F.4th 484, 492 (6th Cir. 2021); *Gibson v. Colvin*, No. 2:12-131-DCR, 2013 WL 6191754, at *3 (E.D. Ky. Nov. 26, 2013) (adhering to the EAJA presumptive statutory cap because plaintiff failed to satisfy "her burden demonstrating that the fees should be increased for this matter"). This Court's decision to default to that cap after giving Stamper multiple opportunities to correct his motion was not a clear error of law but, rather, an appropriate attempt to preserve judicial resources. Accordingly, Stamper has failed to meet the exacting clear error standard.

## IV. <u>MANIFEST INJUSTICE</u>

A showing of manifest injustice requires the existence of a "fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." *Meador v. Growse*, No. 5:12-CV-120-KKC, 2014 WL 3654723, at *5 (E.D. Ky. July 23, 2014) (citing *In re Bunting Bearings Corp.*, 321 B.R. 420, 423 (Bankr. N.D. Ohio 2004)). Although the manifest injustice ground is a "catch-all provision," it does not "allow a disappointed litigant to attempt to persuade the Court to change its mind." *Doshi v. General Cable Corp.*, No. 2:14-CV-22, 2015 WL 2229233, at *3 (E.D. Ky. May 12, 2015) (quoting *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 809 (N.D. Ohio 2010)). "Evaluating whether denying a Rule 59(e) motion would result in manifest injustice is 'a fact-specific analysis that falls squarely within the discretionary authority of the Court.'" *Id.* (quoting *Lonardo*, 706 F. Supp. 2d at 809).

Stamper argues that the Court's decision to default to the statutory cap in his case, despite previously granting an uncontested fee award submitted by his same counsel in *Rose v. Bisignano*, "is the essence of manifest injustice." [DE 30, Page ID# 1151–52]. Moreover, Stamper contends that the "reduction[2] worked a manifest injustice" when the Court twice denied the motion without prejudice and invited cure, but on Stamper's third attempt, defaulted to the statutory rate. [*Id.* at Page ID# 1152–54]. Specifically, Stamper states, "It was reasonable for Counsel to believe she

[2] Notably, the Court did not "reduce" Stamper's attorneys' fees. Instead, the Court found that Stamper did not justify an above-cap hourly rate and therefore awarded fees at the applicable statutory rate. The Court thus did not reduce a requested fee award; rather, it declined to approve an enhanced fee award that Stamper did not adequately justify.

adequately responded to the Court's requests, particularly in light of the fact that the Court never requested proof of credentials in *Rose*, where the Court granted the stipulated motion for fees without any demands for proof of the market rate or credentials. Moreover, counsel also did not believe that her credentials—or the credentials of her firm—were in question." [*Id.* at 1153–54].

Stamper is correct that this Court previously awarded the full requested, and uncontested, fee amount for his counsel in *Rose v. Bisignano*, 5:25-CV-00196-MAS, with less evidence than was presented in this matter. This Court, however, now holds that the fee award in *Rose* was in clear error, due to the Court's inability to complete the same analysis that is explained above. But Stamper's contention that this Court is bound to its previous, erroneous ruling is incorrect. "It is true that there are a number of reasons why a court may decline to give *stare decisis* effect to its own prior decisions, among them that the prior decision was patently wrong." *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, No. 02-CV-73740-DT, 2005 WL 6225275, at *12 (E.D. Mich. Mar. 16, 2005) (citing 18 MOORE'S FED. PRAC. § 134.06(1)(b)). Accordingly, this Court is not required to perpetrate the error reflected in *Rose*.

Moreover, Stamper seemingly implies that this Court should have continued to afford him opportunities to correct his motion for attorneys' fees, instead of defaulting to the statutory cap. As previously stated, it is well within a court's discretion to default to the presumptive statutory cap of $125.00 where a "claimant has failed to substantiate his request for a higher [fee award]." *Doucette v. Comm'r of Soc. Sec.*, 13 F.4th 484, 492 (6th Cir. 2021). There is no requirement that a court

provide *any* opportunity for remediation, particularly where the court has already identified the deficiencies and afforded a party multiple opportunities to address them. Providing repeated opportunities to cure the same deficiencies unnecessarily consumes judicial resources. And the fact that Stamper was unable to appropriately cure his motion within the constraints set forth by the Sixth Circuit after three attempts does not rise to the level of manifest injustice.

As for counsel's contention that she did not believe that her credentials were in question, counsel misinterprets this Court's obligation to apply the governing law. A court's role is to interpret and apply the law. *See Slack Technologies, LLC. V. Pirani*, 598 U.S. 759, 770 (2023) ("Our only function lies in discerning and applying the law as we find it."). In the context of EAJA fee awards, the law requires sufficient evidence that a rate exceeding the statutory cap is reasonable, as set out by *Blum* and, in the Sixth Circuit, *Bryant*. As explained above, this requires courts to evaluate the skill, experience, and reputation of the attorneys involved or, at the very least, to examine whether the requested rate is reasonable in light of prevailing rates for comparable legal services within the relevant community. The Court is not questioning counsel's credentials as a personal offense but, rather, following the case law set before it.

In sum, because Stamper has failed to show the existence of a fundamental flaw in the Court's decision, this Court is reticent to find that manifest injustice will occur by enforcing its previous fee award. However, this Court recognizes the likely confusion Stamper's counsel experienced when attempting to square the multiple

denied motions for attorneys' fees in this case with this Court's decision in *Rose*. Thus, it will allow Stamper a final opportunity to cure the substantive defects identified herein.

Accordingly, **IT IS ORDERED** as follows:

1. Plaintiff's Motion to Alter Judgment [DE 30] is **GRANTED** to the extent that Plaintiff is permitted a final opportunity to supplement the record regarding his request for an above-cap EAJA fee award.
2. Within **ten (10) days** of the entry of this Memorandum Opinion and Order, Plaintiff may re-file an Amended Motion for Attorneys' Fees, addressing the issues identified herein.

Signed this the 14th of August, 2026.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY